MARIAN B. PRINGLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PHYLLIS B. BRUNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 34943, 34944. Promulgated June 9, 1932.

*Ralph W. Smith, Esq.*, for the petitioners.
*C. H. Curl, Esq.*, for the respondent.

OPINION.

McMahon: In computing the profit on the sale by the petitioners in 1923 of certain property which they received under the will of their mother, Ida Wilcox Beveridge, referred to as the decedent, the respondent used as the basis the value of the property at August 7, 1914, the date of the death of the decedent, to wit, $76,600. The question here presented is whether that figure is the proper basis to be used or whether there should be used as the basis the value at July 25, 1923, the date of the termination of the trust, the value at which time was equal to the selling price of the property. In the latter event, the petitioners are not chargeable with any profit upon the sale. Section 202 of the Revenue Act of 1921 provides in part as follows:

(a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—

   \*       \*      \*      \*      \*      \*      \*

(3) In the case of such property, acquired by bequest, devise, or inheritance, the basis shall be the fair market price or value of such property at the time of such acquisition. \* \* \*

Petitioners contend that what they received at the date of death of the decedent was simply a contingent remainder and that they did not *acquire* the property in question until the date of the expiration of the trust period. They argue that the trustees held an estate comparable to an intervening life estate and that the petitioners simply had a contingent remainder. None of the cases cited by petitioners hold that trustees take a beneficial interest in real property. They simply sustain the proposition that a testamentary trustee takes *legal title* to real property immediately upon the death of the testator.

Petitioners cite the following provision of the laws of California, which was in effect at the date of the death of the decedent:

*Trustees of express trusts to have whole estate.* Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust. [Sec. 863 of the Civil Code of California, 1927, legislation enacted March 21, 1872.]

However, in *In re Fair's Estate*, 132 Cal. 523; 60 Pac. 442, the Supreme Court of California stated in regard to that section:

\* \* \* The provision in section 863, Civ. Code, that, "except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust," is limited by the succeeding sections to the estate given to the trustee for the purposes of the trust, and does not include any estate in the property which is not required by the trust. *Morffew* v. *Railroad Co.*, 107 Cal. 587, 40 Pac. 810. \* \* \*

From a reading of the will it is clear that the decedent did not intend to vest in the trustees any interest except the legal title to the property, to hold in trust for the beneficiaries.

The law of California that was in effect at the date of the death of the decedent provided in part as follows:

§ 768. *Reversions.*—A reversion is the residue of an estate left by operation of law in the grantor or his successors, or in the successors of a testator, commencing in possession on the determination of a particular estate granted or devised.

§ 769. *Remainders.*—When a future estate, other than a reversion, is dependent on a precedent estate, it may be called a remainder, and may be created and transferred by that name. [Sections 769 of the Civil Code of California, 1927—legislation enacted March 21, 1872.]

Clearly, the interest which the petitioners obtained upon the death of the decedent was not a remainder. Their interest under the trust was not dependent on a precedent estate.

In *In re Blake's Estate*, 157 Cal. 448; 108 Pac. 287, cited by petitioners, the Supreme Court of California stated:

The cardinal rule in the interpretation of a will is that "it is to be construed according to the intention of the testator." Civ. Code, § 317. As said in Estate of Young, 123 Cal. 337, 55 Pac. 1011: "The purpose of construction as applied to wills is unquestionably to arrive, if possible at the intention of the testator; but the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed in the language of the will." It is not the business of the court to say, in examining the terms of a will, what the testator intended, but what is the meaning to be given to the language which he used. Where the terms of a will are free from ambiguity, the language used must be interpreted according to its ordinary meaning and legal import, and the intention of the testator ascertained thereby. It is true that presumptions are to be indulged in which will prevent intestacy (Le Breton v. Cook, 107 Cal. 410, 40 Pac. 552), and that testamentary devises are presumed to vest at the death of the testator (Civ. Code, § 1341); but these presumptions, like the auxiliary rules of construction relied on by appellant, are subordinate to the cardinal rule just stated.

See also *Henry J. Faulkin et al.*, 13 B. T. A. 1200

Under the laws of California there was a presumption that the property vested in the beneficiaries at the testator's death. The

following provisions of the laws of California were in effect at the time of decedent's death:

§ 1341. *When devises and bequests vest.* Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death.

§ 1342. *When cannot be divested.* A testamentary disposition, when vested, cannot be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose. [Sections 1341 and 1342 of the Civil Code of California, 1927—legislation enacted March 21, 1872.]

Even aside from the statutory presumption, we believe, from a reading of the will, that it was the intention of the decedent that her children should receive a vested interest under the trust immediately upon her death. The statutory presumption is augmented by the intention of the testator as evidenced by the provisions of the will, particularly the following provision:

Should any or either of my trusts hereinbefore provided for be adjudged null by the final decree of any court, then it is my will that the property covered by such trust shall be and become the property of my children who may be living at my death.

In *Brewster* v. *Gage*, 280 U. S. 327, the Supreme Court held that upon the death of the owner of personal property, there vests in his heirs or legatees immediately the right to respective distributive shares of so much as might remain after proper administration, and the right to have that share delivered upon entry of the decree of distribution, but that legal title vests in the executors or administrators. The title to real estate, however, as pointed out in that case, passes to the owner's heirs or devisees immediately upon the owner's death. The court there stated:

Petitioner's right later to have his share of the residue vested immediately upon testator's death. At that time petitioner became enriched by its worth, which was directly related to and would increase or decline correspondingly with the value of the property. And, notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right or of the property before or after the decree of distribution. And we think that, in substance, it would not be inconsistent with the rules of law governing the descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death.

In the instant proceeding legal title to the property in question vested immediately upon the death of the decedent in the trustees by virtue of the provisions of decedent's will. Thus, although the instant proceeding involves realty, the situation herein closely resembles that in *Brewster* v. *Gage*, *supra*, since the legal title did not vest immediately in the petitioners herein upon the death of the

decedent. In the instant proceeding, under the principles enunciated in *Brewster* v. *Gage, supra*, there vested in the petitioners the right to their distributive shares of so much of the property as might remain at the end of the trust period, and the right to have it delivered at the end of that period. In *Brewster* v. *Gage, supra*, the executors were in the position of trustees. The court pointed out, and the same is true in the instant proceeding, that the trustees did not take title for themselves, but on behalf of the beneficiaries. Here also, as in *Brewster* v. *Gage, supra*, the decree of distribution conferred upon the beneficiaries no new right. It merely identified the property remaining, it evidenced the right of possession in the beneficiaries, and required the trustees to deliver the property to the beneficiaries. The legal title so given related back to the date of the death of the decedent. The petitioners' right to distribution of the property to them would be defeated only in the event of their death.

The case of *Estate of Francis Abeles et al.*, 24 B. T. A. 435, although involving personal property, is also helpful in the instant proceeding. There certain stock was transferred by the testator in trust for a period not to exceed five years, at the end of which time it was to be distributed to certain beneficiaries. In that case we stated:

We can see no essential difference, as to the principle involved, between that case [Brewster v. Gage] and the present proceedings. There, possession and dominion by the legatees was deferred during an indeterminate period of administration; here, possession is postponed for not to exceed a five-year trust period, the legatees meanwhile receiving the income earned by the stocks. We hold, therefore, that the stocks in question were acquired upon the death of Julius D. Abeles on August 15, 1920.

Cf. *Security Trust Co. et al., Trustees*, 25 B. T. A. 29.

At the death of the decedent these petitioners " acquired " the property within the meaning of the revenue act.

In view of the fact that there is no remainder involved in the instant proceeding, we are not concerned with the cases dealing with remainders, such as *William Huggett*, 24 B. T. A. 669.

We hold that the respondent did not err in using the value of the property at the date of the death of the decedent as the basis for the computation of gain derived by petitioners upon the sale of the property.

We find nothing in the cases relied upon by the petitioners which leads to a different conclusion.

*Judgment will be entered for the respondent.*